## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF FLORIDA
## TAMPA DIVISION

**TWILA FORD, AND BRANDY FOUNTAIN (f.k.a. LATRICE ANDREWS-CARTER)**, individually and on behalf of all other similarly situated individuals,

        Plaintiffs,

v.

**E-TELEQUOTE INSURANCE, INC.,**

        Defendant.

Case No.:

Hon.:

**COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND**

Plaintiffs, Twila Ford and Brandy Fountain (f.k.a. Latrice Andrews-Carter), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against Defendant, e-Telequote Insurance, Inc., and state as follows:

### INTRODUCTION

1.    This is a collective and class action brought under 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, Twila Ford and Brandy Fountain (f.k.a. Latrice Andrews-Carter) (hereinafter referred to as "Plaintiffs"), individually and on behalf of all similarly situated persons employed by Defendant, e-Telequote

(hereinafter referred to as "e-Telequote" or "Defendant"), arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq.*, Nev. Rev. Stat. (hereinafter "N.R.S.") §§ 608.016, 608.018, 608.020, 608.030, 608.040 and 608.260, and common law.

2.    According to Defendant's website, Defendant is in the call center services business.  Services include, ". . . provid[ing] no-cost consultations for Medicare-eligible individuals.  [e-Telequote] represent[s] a number of carriers for Medicare Advantage plans, Medicare Supplemental Insurance (Medigap) plans, and Medicare Part D plans."[1]

3.    In order to field these calls, Defendant employs hourly (non-exempt) call center employees, referred to herein as "Agents."  Defendant employs the Agents, including Plaintiffs, both in a "remote" environment, working from their homes or from any one of their call centers located throughout the United States.

4.    Regardless of the specific job title all Agents: (1) are paid on an hourly basis; (2) are classified as non-exempt employees; (3) use the same timekeeping system(s); (4) use many (if not all) of the same computer programs; (5) are subject to the same relevant timekeeping and attendance policies; and (6) have the

---

[1] *See* https://www.etelequote.com/what-we-do (last visited May 9, 2023).

primary job duty of providing assistance to Defendant's customers.

5.     The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's Agents, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. *See* **Exhibit A**, DOL Fact Sheet #64: Call Centers under the Fair Labor Standards, available at *https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers.*

6.     One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

7.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

8.     Defendant requires its Agents to work a full-time schedule, plus

overtime. However, Defendant does not compensate the Agents for all work performed; instead, Defendant requires its Agents to perform compensable work tasks before their scheduled shifts when they are not logged into Defendant's timekeeping system. Further, Defendant automatically clocks the Agents out of Defendant's timekeeping system when they experience technical issues, but requires them to remain working while the technical issues are resolved. These policies result in Agents not being paid for all time worked, including overtime.

9.      In the course of performing their jobs responsibilities, Defendant's Agents used multiple networks, software programs, applications, and servers (including utilizing multiple user names and passwords). The time the Agents spend booting up and logging into these networks, software programs, applications and servers before their shifts is compensable because the networks, programs, applications and servers, are an integral indispensable, and important part of the Agents' work, and they cannot perform their jobs effectively without them.

10.     In particular, Defendant requires its Agents to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that are integral and indispensable to their jobs, including logging into multiple computer

networks, software programs, applications, and servers.  The Agents only clocked in and received compensation *after* this pre-shift work was completed, though they were required to perform this work in order to be fully ready to take calls when their scheduled shifts began.

11.    Furthermore, Defendant required Plaintiffs and other Agents to clock-in before the start of their scheduled shift for "Morning Meetings", however, Defendant did not compensate Plaintiffs and the other Agents for time spent at the "Morning Meetings."

12.    Further, Defendant automatically clocks the Agents out of Defendant's timekeeping system when they experience technical issues but requires them to remain working while the technical issues are resolved.

13.    Defendant's Agents perform the same basic job duties and are required to log into the same or similar computer networks, software programs, applications, and servers (including utilizing multiple user names and passwords).

14.    The individuals Plaintiffs seek to represent in this action are current and former Agents who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendant's violations of federal and state

law.

15.     Defendant knew or could have easily determined how long it takes Agents to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the Collective and Class for this work, but did not.

16.     Defendant, through its managers, had actual and constructive knowledge that its Agents were completing this off-the-clock work without compensation.  Nevertheless, Defendant suffered or permitted, and in fact, trained and required, its Agents to complete this unpaid work.

17.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiffs' claim raises a federal question under 29 U.S.C. § 201, *et seq.*

19.    This Court has diversity jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1332 because the Named Plaintiffs and Defendant reside in different states.

20.    Additionally, this Court has jurisdiction over Plaintiffs' FLSA claim pursuant to 20 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

21.    Defendant's annual sales exceed $500,000, and Defendant has more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

22.    The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

23.    The Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Florida, is incorporated in the

state of Florida, and maintains its principal place of business in the state of Florida.

24.     Venue is proper in the Central District of Florida Tampa Division pursuant to 28 U.S.C. §1391 (b) and (c) and L.R. 1.04 because the Defendant conducts business in this District, and a substantial portion of the events that vie rise to the Plaintiffs' claims occurred in this District.

25.     All of the alleged causes of action can be determined in this judicial proceedings and will provide judicial economy, fairness, and convenience for the parties.

## INTRADISTRICT ASSIGNMENT

26.     A substantial part of the events or omissions which give rise to the claims occurred in Pinellas County, and therefore this action is properly assigned to the Tampa Division.  L.R. 1.04.

## PARTIES

27.     Plaintiff Twila Ford is a resident of Las Vegas, Nevada.  Plaintiff Ford worked for Defendant as an Agent from approximately April 2020 until approximately November 2020.  Ford left Defendant's employ for medical reasons. Defendant compensated Plaintiff Ford for her services as an Agent in the form of an hourly wage, most recently at the rate of $21.00 per hour.  Plaintiff Ford signed

a consent form to join this collective action lawsuit, *Exhibit B*.

28.    Plaintiff Brandy Fountain (f.k.a Latrice Andrews-Carter) is a resident of Las Vegas, Nevada.  Plaintiff Fountain worked for Defendant as an Agent from approximately April 2020 until approximately June 2020, when she left for medical reasons.  And then again from approximately June 2021 until approximately January 2022.  Defendant compensated Plaintiff Fountain for her services in the form of an hourly wage, most recently at the hourly rate of $21.00 per hour.  Plaintiff signed a consent to join the collective action lawsuit, *Exhibit C*.

29.    Additional putative Collective members were or are employed by Defendant as Agents in Nevada and potentially other states during the past three years and their consent forms will also be filed in this case.

30.    According to Defendant's website, Defendant is "Cutting-Edge Technology Meets Consumer Advocacy – Creating a unique concierge-style experience for Medicare beneficiaries."

> Our mission at e-Telequote is quite simple: Empower easyMedicare.com Agents to assist Medicare beneficiaries in selecting a Medicare plan that best suits their healthcare and financial needs.[2]

31.    Defendant e-Telequote, Inc., is a Florida Corporation with its

---

[2] *See* https://www.etelequote.com/ (last visited May 9, 2023).

principal place of business and headquarters located at: 5659 Rio Vista Drive, Clearwater, Florida 33760.  Its registered agent for service of process is C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

32.    Upon information and belief, Defendant employed hundreds of Agents – including Plaintiffs – within the past three years and across the United States to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

33.    Throughout their employment with Defendant, Plaintiffs and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

34.    Defendant maintains call centers and allows for remote work, which provides customer, sales, and claims support to Defendant's customers throughout the United States.[3]

35.    Defendant has employed hundreds of agents over the past three years as part of its call centers and remote work to handle customer phone calls concerning various issues.

36.    Agents are typically paid at a rate of approximately $20.00 to $21.00

---

[3] *See* https://www.etelequote.com/contact-us (last visited May 9, 2023).

per hour.

37.     Defendant compensated its Agents on an hourly basis and classified

them as non-exempt employees under the FLSA.

38.     Upon information and belief, Defendant maintains documents that

demonstrate the promised hourly wage for each Agent, including but not limited

to: offer letters, paystubs, and/or other payroll records.

39.     Defendant's Agent position typically had schedules that require

employees to work at least eight (8) hours per day (with a 30-minute unpaid meal

period), on average five (5) days each week, and up to forty (40) hours or more in

a workweek.  However, in some workweeks Defendant's Agents work less than

forty (40) hours in a week and in other weeks they work more than forty (40) hours.

If Defendant's Agents strictly adhere to Defendant's baseline forty (40) hour

schedule, the Agent schedule results in Agents working overtime on a weekly

basis.

40.     Throughout their employment with Defendant, Plaintiffs' job duties

included fielding inbound calls and performing a wide range of support services

to those callers with questions.

41.     Once, hired, Defendant provides all Agents with training on, inter

alia, how to carry out their day-to-day job duties, including how to load and log

into their computer programs at the beginning of the day, and how to log out at

the end of the day; how to track their time; the importance of attendance and

schedule expectations; and Defendant's policies related to each topic.  The training

Defendant's Agents receive is substantially, if not entirely, the same and all Agents

are subject to the same disciplinary policies.

42.    Plaintiffs and other similarly situated Agents are instructed to be

"phone ready" the moment their scheduled shift starts.  This requires Defendant's

Agents to be logged in and have loaded all of their essential work-related

computer programs and applications at the start of their shift so they can be

prepared to take calls the moment their shift begins.   An Agents failure to be

"phone ready" could result in poor performance evaluations, warnings, discipline,

and possibly termination.  Thus Defendant forces its Agents to perform the boot-

up and login process before clocking into Defendant's timekeeping system.

43.    All of Defendant's Agents use the same or similar computer

networks, or software, programs, and applications in the course of performing

their job responsibilities.  These programs and applications are an integral and

important part of the Agents' work and they cannot perform their jobs without

them.

44.    Once training is completed and in order to perform their job duties, Plaintiffs and all other Agents are required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  However, Plaintiffs and all other Agents are not actually "clock in" for their shifts until after the computer boot-up and login process is complete or nearly complete.

45.    The pre-shift off-the-clock time Plaintiffs and all other Agents spend booting up and logging in to their computers directly benefits Defendant and is integral and indispensable to the Agents' job responsibilities.

46.    Plaintiffs and all other similarly situated Agents are also trained or instructed to clock out before closing all work applications and systems to make certain they are clocked out the moment they are done fielding calls.

47.    Defendant's Agents also perform off-the-clock work when returning when they experience technical difficulties.

48.    Despite knowing Plaintiffs and all other Agents perform this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

49.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other Agents boot up and log into their computers each day, along with the time they log into their telephone systems.

50.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiffs and all other Agents experience downtime due to technical issues.

51.     Because Defendant requires its Agents to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Agents spend working for Defendant.  Thus, the hours reflected on the Agents' paystubs are also inaccurate representations of the hours they worked.

52.     Despite its ability to track the amount of time Plaintiffs and other Agents spend in connection with the pre-shift boot-up and login process, post-shift shutdown process and technical downtime, Defendant failed to pay Plaintiffs and other Agents for the off-the-clock work they performed each shift, thus breaching its contracts with its Agents.

53.     Plaintiffs and similarly situated Agents, regularly worked overtime

and non-overtime hours for which they were not paid.

54.     During the weeks that Agents do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents.

## A. <u>Pre-Shift Off-the-Clock Work</u>

55.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other Agents are required to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that are integral and indispensable to their jobs, including logging into multiple computer networks, software programs, applications, and servers. The Agents only received compensation after this pre-shift work was completed, though they were required to perform this work in order to be fully ready to take calls when their scheduled shifts began.

56.     Defendant uses its attendance/schedule adherence policies to pressure its Agents into arriving early and working off-the-clock so they can be "phone ready" at the start of their shifts.

57.     Defendant requires Plaintiffs and all other Agents to attend daily "Morning Meetings" which begin approximately fifteen minutes prior to their shift start time.

58.    Defendant requires Plaintiffs and all other Agents to clock in for the daily "Morning Meetings", but does not compensate Plaintiffs and all other Agents for that time.

59.    Defendant requires Plaintiffs and all other Agents to be "phone-ready" the moment the daily "Morning Meetings" are over resulting in Plaintiffs and all other Agents having to arrive and begin their pre-shift boot-up process thirty (30) minutes before the start of their shift (or fifteen (15) minutes before the start of the daily "Morning Meetings").

60.    The off-the-clock pre-shift process takes substantial time on a daily basis with said time ranging from fifteen (15) to twenty (20) minutes per shift. Specifically, before each shift Agents must undertake the following essential work tasks:

- Turn on/warm-up their computer;

- Log in to Defendant's Virtual Private Network ("VPN") using a username and password;

- Enter username and password in computer to access the computer desktop;

- Open Cisco

- Open Workforce

- Open Medicare.gov (the program used to write policies)

- Open Citrix

- After the Citrix opens, opening CRM Live (used to receive calls)

- Set up headset and microphone;

- Open internet explorer;

- Open Kronos timekeeping system using a username and password

- Open Paylocity using a username and password;

- Open Microsoft Outlook and Teams; and

- Open Agent Portal to access tools and resources.

61.    Defendant's Agents must complete this process before the start of their scheduled shifts, before the start of their "Morning Meetings" and before fielding phone calls.  Consequently, the Agents must arrive to work approximately thirty (30) to forty (40) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

62.    Defendant's Agents are not compensated for all of this time because Defendant prohibits Agents from clocking into its timekeeping software more than five (5) minutes before the start of the "Morning Meetings" for which they are also not compensated.

63.    The pre-shift off-the-clock work performed by Agents directly benefits Defendant, and is integral and indispensable to their job duties and responsibilities as Agents.

**B. <u>Post-Shift Off-the-Clock Work</u>**

64.     Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other Agents are required logout of their call program and to clock out of Defendant's timekeeping system before closing all work applications and systems to make certain they are clocked out the moment they stop fielding calls.

65.     The off-the-clock post-shift process takes substantial time on a daily basis with said time ranging from five (5) to ten (10) minutes per shift.  Specifically, after each shift Agents must undertake the following essential work tasks:

- Log out of CRM program;

- Clock out of Kronos;

- Log out of Agent Portal;

- Closeout Microsoft Outlook and Teams;

- Close Workforce;

- Close Cisco;

- Check timecard in Paylocity and close the program;

- Log out of Defendant's VPN

- Log off and turn off computer

66.     The post-shift off-the-clock work generally takes anywhere from five (5) to ten (10) minutes per shift, but Defendant's Agents are not paid for this time.

67.    The post-shift off-the-clock work Plaintiffs and other Agents perform is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Agents.

C. **Technical Issues Off-the-Clock**

68.    Additionally, in the course of performing their jobs, the Agents regularly experience technical issues with their computer systems which prohibits them from taking calls on behalf of Defendant.

69.    In these situations, Defendant directs the Agents to clock out of Defendant's timekeeping system during the time period while the technical issue is being resolved.  The Agents can spend up to one (1) hour or longer working with Defendant's technical team to resolve the problem(s).

70.    Despite requiring the Agents to clock out of its timekeeping system, Defendant requires the Agents to remain working while the technical issues are resolved (including, among other things, to spend time on their computers and phones with Defendant's technical team).

71.    Defendant does not compensate the Agents for the time they spend working off-the-clock in connection with the technical issues.

72.     Defendant is aware of the time Agents work with Defendant's technical team to resolve the technical issues, and Defendant can pay Agents for this time, but does not.

**D. Defendant Benefitted from the Uncompensated Off-the-Clock Work**

73.     At all relevant times, Defendant has required and directly benefited from the off-the-clock work performed by Plaintiffs and all other Agents in connection with pre- and post-shift activities described above.

74.     At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Agents.

75.     At all relevant times, Defendant has been able to track the amount of time Plaintiffs and all other Agents spend in connection with the pre- and post-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiffs and all other Agents for the off-the-clock work they performed.

76.     At all relevant times Plaintiffs and all other Agents have been non-exempt hourly employees, subject to the requirements of the FLSA.

77.     At all relevant times, Defendant used its attendance and adherence

policies against Plaintiffs and the other Agents in order to pressure them into performing pre- and post-shift work off-the-clock.

78.    Defendant expressly trained and instructed Plaintiffs and all other Agents to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

79.    Defendant instructed Agents to have all work applications and systems fully loaded before both their "Morning Meeting" and the start of their shifts, which takes them in the range of fifteen (15) to twenty (20) minutes per day.

80.    Similarly, at the end of the shift, Defendant instructed Agents to clock out before closing all work applications and systems to make certain they are clocked out the moment they stop fielding calls.

81.    At all relevant times, Defendant's policies and practices deprived Plaintiffs and the Agents of wages owed for off-the-clock the pre-shift, post-shift and technical activities they performed.  Because Defendant's Agents typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

82.    Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiffs worked over forty (40) hours and

exactly which weeks they worked under forty (40) hours.

83.     Defendant has known or should have known that the time spent by Plaintiffs and other Agents in connection with the off-the-clock pre-shift, post-shift, and technical issue activities is compensable under the law.  Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they have acted in good faith.

84.     Despite knowing Agents performed off-the-clock work before and during their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

85.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rate because Plaintiffs worked in excess of forty (40) hours in a workweek.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

86.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former Agents who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

87.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated Agents.

88.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside salespersons.

89.    Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective are not paid the full premium overtime compensation they are due when they work beyond forty (40) hours in a workweek and are not paid any overtime in workweeks where their time cards reflect that they work slightly less than forty (40) hours, such as thirty-eight (38) to forty (40) hours, but actually work in excess of forty (40) hours.

90.    Defendant assigns and/or is aware of all of the work that Plaintiff and the members of the FLSA Collective perform.

91.    Upon information and belief, Defendant utilizes a centralized payroll system which calculates overtime pay for all similarly situated employees in the same or similar manner.

92.    As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engages in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

    a.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek;

    b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant; and

    c.    Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, for off-the-clock work, such as tech time; the pre-shift boot-up process; and the time spent post-shift closing all applications, networks and programs and shutting down their computers.

93.    Defendant is aware or should be aware that federal law required it to pay Plaintiffs and the members of the FLSA Collective overtime premiums (computed at their regular rate of pay) for hours worked in excess of forty (40) per workweek.

94.    Defendant's unlawful conduct has been and continues to be widespread, repeated, and consistent.

95.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. §

216(b).  The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

96.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay.  The key issues – the amount of uncompensated pre- and post-shift off-the-clock work and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

97.    There are many similarly situated current and former Agents who have been underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

98.    Plaintiffs estimate the FLSA Collective, including both current and former Agents over the relevant time period, includes hundreds of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

99.     All of the estimations discussed herein will be refined after class discovery is completed.

## **RULE 23 NEVADA CLASS ACTION ALLEGATIONS**

100.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former Agents who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nevada Class"). Plaintiffs reserve the right to amend this definition as necessary.

101.    The members of the Rule 23 Nevada Class are so numerous that joinder of all Rule 23 Nevada Class members in this case would be impracticable. Plaintiffs reasonably estimate that there are hundreds of Rule 23 Nevada Class members. Rule 23 Nevada Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

102.    There is a well-defined community of interest among Rule 23 Nevada Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nevada Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the off-the-clock time worked by the Rule 23 Nevada Class members in connection with the activities described in this Complaint is compensable time;

b. Whether the Rule 23 Nevada Class members are owed wages for the off-the-clock time worked in connection with the activities described in the Complaint;

c. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nevada Class member regular wages or minimum wage for each non-overtime hour worked

d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Nevada Class member overtime compensation for each overtime hour worked; and

e. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating state laws and wage acts applicable to the members of the Rule 23 Nevada Class.

103. *Typicality*: Plaintiffs' claims are typical of claims of the Rule 23 Nevada Class they seek to represent in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from Defendant's similar policies, practices, and course of conduct as all other Class members' claims and Plaintiffs' legal theories are based on the same or similar facts.

104. *Adequacy*: Plaintiffs will fully and adequately protect the interests of the Rule 23 Nevada Class and have retained national counsel who are qualified

and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nevada Class.

105.    *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, inter alia, it is economically infeasible for the Rule 23 Nevada Class Members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

106.    This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

107.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a

categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

108.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 South Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 South Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

109.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former Agents who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiffs reserve the right to amend this definition if necessary.

110.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

111.    There is a well-defined community of interests among Rule 23

Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class.  These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift time Rule 23 Nationwide Class members spend on startup and login activities each shift is compensable;

b. Whether the post-shift time Rule 23 Nationwide Class members spend closing all programs, applications and networks is compensable;

c. Whether the technical downtime Rule 23 Nationwide Class members spend troubleshooting is compensable;

d. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

e. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

112.    Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

113.   Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiffs retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

114.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, inter alia, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

115.   This case will be manageable as a Rule 23 Class action.  Plaintiffs and their counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

116.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to

pursue his claim as a class action").

117.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) COLLECTIVE ACTION)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. – FAILURE TO PAY OVERTIME**

118.    Plaintiffs incorporate the foregoing paragraphs 1-99 as if fully restated herein.

119.    At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

120.    At all times relevant Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

121.    At all times relevant to this action, Plaintiffs were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

122.    Plaintiffs and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

123.    Plaintiffs either: (1) engaged in commerce; (2) engaged in the

production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

124.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

125.    At all times relevant to this action, Defendant required Plaintiffs and the proposed FLSA Collective members to perform no less than twenty (20) minutes and as much as fifty (50) minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for all services performed.

126.    The off-the-clock work performed every shift by Plaintiffs and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities are not *de minimis*.

127.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. § 207.

128.   In workweeks where Plaintiff and other FLSA Collective members'
time cards reflect thirty-eight (38) to forty (40) hours, the uncompensated off-the-
clock work time under forty (40) hours should be paid at regular time, and all
additional time, assuming it adds up to over forty (40) hours, should have been
paid at the federally mandated rate of one and one half (1.5) times each employee's
regularly hourly wage, including the shift differential where applicable. 29 U.S.C.
§ 207.

129.   Defendant's violations of the FLSA were knowing and willful.
Defendant knew or could have determined how long it takes its Agents to perform
their off-the-clock work. Further, Defendant could have easily accounted for and
properly compensated Plaintiffs and the proposed FLSA Collective members for
these work activities, but did not.

130.   Plaintiff and all others similarly situated are entitled to back pay as
well as liquidated damages in an amount equal to their back pay. As a result of
Defendant's FLSA violations, Plaintiff and all others similarly situated are owed
overtime wages at a rate to be calculated by taking the difference between the
overtime they should have received for each workweek and the overtime they did
receive during the same time period calculated using the incorrect regular rate.

The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

131.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## RULE 23 NEVADA CLASS ACTION
## VIOLATIONS OF
## N.R.S. §§ 608.016, 608.018 608.020, 608.030, 608.040, AND 608.260
## FAILURE TO PAY WAGES AND OVERTIME UNDER NEVADA LAW

132.    Plaintiffs incorporate the foregoing paragraphs 1-72 and 100-108 as if fully restated herein.

133.    All members of the Rule 23 Nevada class are entitled to their regular wages and/or overtime pursuant to Nevada's wage and hours laws, N.R.S. §§ 608.16, 608.018, and 608.260.

134.    At all times relevant to this action, Defendant was an "employer" for the purposes of the N.R.S § 608.011.

135.    At all times relevant to this action, Plaintiffs and the Rule 23 Nevada Class member were "employees" for the purposes of the N.R.S. § 608.010.

136.   N.R.S. § 608.016 states that an "employer shall pay to the employee wages for each hour the employee works."

137.   N.R.S. § 608.018 states that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or eight (8)  hours per day assuming the employee earns less than 1.5 times the Nevada minimum wage.

138.   N.R.S. § 608.020 states that "Whenever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

139.   N.R.S § 608.030 states that "Whenever an employee resigns or quits his or her employment, the wages and compensation earned and unpaid at the time of the employee's resignation or quitting must be paid no later than: 1. The day on which the employee would have regularly been paid the wages or compensation; or 2. Seven days after the employee resigns or quits, whichever is earlier."

140.   N.R.S. § 608.260 allows employees to "bring a civil action to recover the difference between the amount paid to the employee and the amount of the minimum wage."

141.    By failing to pay Plaintiffs and the members of the Rule 23 Nevada Class for all of the time they worked (including a payment equal to 1.5 times their ordinary wage on that time), including the time they worked in connection with the pre- and post-shift off-the-clock work, and technical downtime, Defendant violated N.R.S. §§ 608.016, 608.018, 608.020, 608.030 and 608.260.

142.    Defendant's violations of N.R.S. §§ 608.016, 608.018, 608.020, 608.030, and 608.260 were intentional and, as such, the three-year statute of limitation found in N.R.S. § 11.190(3) applies to those claims.

143.    Defendant's actions discussed above were willfully oppressive, fraudulent, and malicious entitling Plaintiffs and the Rule 23 Nevada Class to punitive damages.

144.    Defendant violated Nevada law, including N.R.S. §§ 608.016, 608.018, 608.020, 608.030, and 608.260 by regularly and repeatedly failing to compensate Plaintiffs and the Rule 23 Nevada Class for the time spent on work activities described in this Complaint.  As a result, Plaintiffs and the Rule 23 Nevada Class have and will continue to suffer loss of income and other damages.  Accordingly, Plaintiffs and the Rule 23 Nevada Class are entitled to recover unpaid wages owed, plus costs, interest, attorneys' fees, and other appropriate relief under

Nevada law including, but not limited to all damages, fees and costs, available under N.R.S. §§608.005 *et. seq.*

145.    Additionally, Defendant violated N.R.S. §§ 608.20 and 608.030 by failing to compensate Plaintiffs and the Rule 23 Nevada Class either immediately upon discharge or within seven (7) days  or upon their next regularly scheduled pay date upon resignation  or quitting.  Accordingly, pursuant to N.R.S. § 608.040 Plaintiffs and the Rule 23 Nevada Class are entitled to thirty (30) days of wages or compensation at the same rate from the day they resigned, quit or were discharged.

<u>COUNT III</u>
<u>RULE 23 NATIONWIDE CLASS ACTION</u>
<u>BREACH OF CONTRACT</u>

146.    Plaintiffs incorporate the foregoing paragraphs 1-75, 77-84 and 109-117 as if fully restated herein.

147.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on behalf of Defendant.

148.    Each Rule 23 Nationwide Class member's contractual hourly rate is identified in paystubs and other records that Defendant prepares as part of its regular business activities.

149.    For example, Defendant offered to compensate Plaintiff Ford at a minimum of $21.00 per hour if she agreed to perform services for Defendant as an Agent. Plaintiff Ford accepted Defendant's offer and performed her duties as an Agent in reliance on the offer.

150.    Defendant breached its contractual promises by failing to pay Agents at their fixed, pre-agreed upon hourly rate for all of the hours worked.

151.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, was contractually entitled to a minimum hourly rate of approximately $20.00 to $21.00 per hour within the applicable period.

152.    Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work and technical downtime described herein.

153.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

154.    Defendant can easily ascertain the amount of damages owed to Plaintiffs and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

155.    Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims).

156.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

157.    As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT IV
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

158.    Plaintiffs incorporate the foregoing paragraphs 1-75, 77-84 and 109-117 as if fully restated herein.

159.    The Count is pled in the alternative to Count III, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

160.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

161.    Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

162.    By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed

each shift, Defendant was unjustly enriched.

163.    Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

164.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

165.    Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

166.    Plaintiffs and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

167.    As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Twila Ford and Brandy Fountain, on behalf of themselves and on behalf of the putative FLSA Collective, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class, request judgment as follows:

a.  Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  Certifying this action as a class action (for the Rule 23 Nevada Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' Nevada state law claims (Count II);

c.  Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' breach of contract and unjust enrichment claims (Counts III and IV);

d.  Designating Plaintiffs as the representatives of the FLSA collective action, the Rule 23 Nevada Class, and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

e.  Declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.  Declaring Defendant's violation of the FLSA was willful;

g.  Declaring Defendant violated N.R.S. §§ 608.016, 608.018, 608.020, and 608.030 and that said violations were intentional, willfully oppressive, fraudulent and malicious;

h.  Declaring Defendant breached its contracts with Plaintiffs and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.  Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the FLSA collective, the Rule 23 Nevada

Class, and the Rule 23 Nationwide Class, the full amount of damages and liquidated available by law;

j.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by federal and state statutes;

k.      Awarding pre- and post-judgment interest to Plaintiff on these damages; and

l.      Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: June 20, 2023                          Respectfully Submitted,

/s/Bradley W. Butcher
Bradley W. Butcher, Esq.
Florida Bar No. 0020045
BUTCHER & ASSOCIATES, P.L.
6830 Porto Fino Circle, Suite 2
Fort Myers, Florida 33912
(239) 322-1650
bwb@b-a-law.com

Jason T. Thompson (P47184)
Kathryn E. Milz (IL ARDC 6297213)
**SOMMERS SCHWARTZ, P.C.**
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
kmilz@sommerspc.com

*Counsel for Plaintiffs, the FLSA*
*Collective and the putative Class*

44